## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

JOSEPH T. PICKERING,      )
                              )
            Plaintiff,     )
     v.                       )
                              )     C.A. No. 24-445-RGA-SRF
TELADOC HEALTH INC.,     )
                              )
            Defendant.    )
                              )

## REPORT AND RECOMMENDATION

Presently before the court in this employment suit for wrongful termination is Defendant Teladoc Health, Inc.'s ("Defendant") motion to dismiss Plaintiff Joseph Pickering's ("Plaintiff") First Amended Complaint ("FAC") for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (D.I. 28)[1] For the reasons that follow, I recommend the court GRANT-IN-PART and DENY-IN-PART Defendants' motion to dismiss Counts I, II and III of the FAC.

## I.    BACKGROUND

This matter arises from Defendant's termination of Plaintiff's employment on March 23, 2023. (D.I. 27 at ¶ 28–29) Plaintiff began his employment with the Defendant as a consultant in September of 2020. (*Id*. at ¶ 7) He assumed a full-time position in September of 2021, as a Director and "Release Train Engineer" ("RTE") of the Company's product known as "Primary 360." (*Id*. at ¶ 8) He began a new position as Senior Director of Operations Risk Management and Corporate Insurance in May of 2022. (*Id*. at ¶ 10) Although Defendant worked remotely

---

[1] The briefing associated with this motion can be found at D.I. 29, D.I. 30, and D.I. 31.

from his Delaware residence, he was required to travel to Teledoc's New York office on several occasions over the course of his employment . (*Id.* at ¶ 13)

As a Senior Director, Plaintiff was responsible for preparing and executing Operations Risk Assessments ("ORA") for Teledoc's business units which included BetterHelp, a Teledoc subsidiary. (*Id.* at ¶ 10) BetterHelp is a mental health platform that provides online mental health services to consumers. (*Id.* at ¶ 15) The FAC alleges that BetterHelp was the subject of an investigation by the Federal Trade Commission ("FTC") for alleged unfair and deceptive trade practices related to improper disclosure of highly sensitive health information about its users and visitors. (*Id.*)

Plaintiff was tasked with assessing five objectives of BetterHelp in the ORA. Plaintiff understood that the ORA was a risk assessment that was required by the FTC. Plaintiff identified in his assessment the following inherent risks:

> (1) lack of execution to attract and retain a top-quality workforce that could impede core business processes; (2) lack of awareness or understanding of regulatory and compliance environments of global markets; (3) lack of ability to ensure system availability; prevent fraudulent activity, and to secure confidential corporate and consumer data; (4) lack of proper credentialing and credential management of therapists; and (5) lack of strategic leveraging of integration opportunities into Teladoc as a shared service.

(D.I. 27 at ¶ 20)

On October 27, 2022, Plaintiff presented his ORA findings at an internal meeting of employees and executives within BetterHelp. (*Id.* at ¶ 25) The FAC alleges that the President of BetterHelp, Matos, directed Plaintiff and others to rewrite the ORA with a more positive assessment of the findings. *Id.* Matos was also a member of Teledoc's executive team. (*Id.* at ¶ 23) The following day, Plaintiff filed an internal complaint on Teledoc's Ethics Hotline alleging that BetterHelp's President directed him and other employees to alter and/or falsify the

BetterHelp ORA during the October 27, 2022, meeting. (*Id.* at ¶ 27) Teledoc maintains a Code of Business Conduct and Ethics policy which prohibits retaliation against an employee for engaging in whistleblowing conduct. (*Id.* at ¶ 14)

Teladoc engaged independent counsel to investigate the reported ethical violation. (*Id.* at ¶ 28) The investigation failed to substantiate Plaintiff's allegations about the conduct of BetterHelp's President or that the BetterHelp ORA was intended to provide any false, misleading or inaccurate information to the FTC. (*Id.*) Plaintiff was informed of the foregoing results of the investigation in March of 2023, through emailed correspondence. (*Id.*) Plaintiff contends that within minutes of his receipt of the results of the investigation, he was required to remotely attend a meeting with Defendant's human resources representatives who informed him that he was laid off immediately due to the elimination of his position. (*Id.* at ¶ 29)

Plaintiff filed the instant suit on April 9, 2024. (D.I. 1) The FAC was filed on October 22, 2024 alleging three causes of action: violation of the Delaware Whistleblower Protection Act ("DWPA") (Count I); breach of the Implied Covenant of Good Faith and Fair Dealing (Count II); and violation of the New York Whistleblower Protection Law (Count III). Defendant moves to dismiss all three counts for failure to state a claim pursuant to Rule 12(b)(6) and lack of subject matter jurisdiction as to Count III, pursuant to Rule 12(b)(1). (D.I. 27) The motion was fully briefed and referred to the undersigned judicial officer on April 15, 2025. (D.I. 32)

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(6) – Failure to State a Claim

Rule 12(b)(6) permits a party to seek dismissal of a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To state a claim pursuant to Rule 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed factual allegations are not required, the complaint must set forth sufficient factual matter, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). In assessing the plausibility of a claim, the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A claim is facially plausible when the factual allegations allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 663; *Twombly*, 550 U.S. at 555–56.

The court's determination is not whether the non-moving party "will ultimately prevail," but whether that party is "entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal citations and quotation marks omitted). This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [the necessary element]." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556). "[A] complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231.

### B. Rule 12(b)(1) – Lack of Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to move for dismissal of an action for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A federal court has subject matter jurisdiction—diversity jurisdiction—over civil actions between citizens

4

of different states when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Rule 12(b)(1) motions may raise facial or factual challenges to subject matter jurisdiction. *See Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). Facial attacks challenge the sufficiency of the pleadings, whereas factual attacks challenge the jurisdictional facts of a plaintiff's claims. *See Lincoln Ben. Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015).

In reviewing a Rule 12(b)(1) facial challenge, the court must accept the truth of all factual allegations in the complaint and afford all reasonable inferences in favor of the plaintiff. *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001). When the challenge to jurisdiction is a factual attack, the court may determine the facts based on the record before it. *See McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 290 (3d Cir. 2006). The party asserting subject matter jurisdiction bears the burden of proof that jurisdiction exists. *See Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

## III.    DISCUSSION

### A.  Count I – Delaware Whistleblowers' Protection Act

Under the Delaware Whistleblowers' Protection Act ("DWPA"):

An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment …

(1) Because the employee, or a person acting on behalf of the employee, reports or is about to report to a public body, verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, unless the employee knows or has reason to know that the report is false.

19 *Del. C.* § 1703(1).

The DWPA defines a violation in relevant part as:

(6) "Violation" means an act or omission by an employer, or an agent thereof, that is:
    a. Materially inconsistent with, and a serious deviation from, standards implemented pursuant to a law, rule, or regulation promulgated under the laws of this

State, a political subdivision of this State, or the United States, to protect employees or other persons from health, safety, or environmental hazards while on the employer's premises or elsewhere [.]

19 *Del. C.* § 1702(6)(a).

To state a claim under the DWPA, Plaintiff must allege that, "(1) [he] engaged in a protected whistleblowing activity; (2) the accused official knew of the protected activity; (3) [Plaintiff] suffered an adverse employment action; and (4) there is a causal connection between the whistleblowing activity and the adverse action." *Doe v. New Castle County*, C.A. No. 21-1450-RGA, 2022 WL 1909394, at *6 (D. Del. Jun. 3, 2022) (quoting *Chance v. Kraft Heinz Foods Co.*, 2018 WL 6655670, at *10 (Del. Super. Ct. Dec. 17, 2018)).

Defendant challenges only the first element. Defendant contends that Plaintiff did not engage in a protected activity because the risk assessments identified in the ORA do not amount to health or safety violations under the DWPA. (D.I. 27 at 12)  In response, Plaintiff points to the topics identified in the ORA which are connected to the health and safety of patients and customers, as follows:

> … Plaintiff was terminated for refusing to falsify records to the FTC, in violation of 18 U.S.C. §1001 wherein the records to be falsified dealt with workplace or environmental safety standards involving the "lack or awareness or understanding of regulatory and compliance environments of global markets," the "lack of proper credentialing and credential management of therapists," and the "lack of strategic leveraging of integration opportunities into Teladoc as a shared service."

(D.I. 27 at ¶ 31)

> The FTC Consent Order required the filing of Reports such as ORAs with the FTC. The statements provided by Plaintiff Pickering in the ORA dealt with issues which needed to be changed because they created dangers for the health and safety of employees and/or customers. These were the same statements which he was told to change by President Matos. If he had made those changes, then he would be falsifying records, and this would lead to problems with health and safety issues.

(*Id.* at ¶ 34a)

6

Viewing the pleaded allegations in the light most favorable to Plaintiff, the FAC plausibly pleads a violation of health or safety standards which Plaintiff reasonably believed had occurred or was about to occur. *See* 19 *Del. C.* § 1703(1). Teledoc assigned Plaintiff the task of assessing risks that could negatively affect Teledoc's compliance with regulatory requirements and certifications of its health care providers. The alleged lack of proper credentialing of mental health therapists was among the risks assessed in the ORA. (*Id.* at ¶ 20) Thus, on a motion to dismiss, the court can reasonably infer that Plaintiff engaged in a protected whistleblowing activity when he reported a request from an executive to alter the findings in his ORA to bolster BetterHelps's appearance with respect to certain risks relevant to the FTC investigation. Moreover, the Defendant does not address or dispute that the FTC required the ORA in the aftermath of its investigation of BetterHelp.

Defendant argues that even if it is determined that Plaintiff engaged in a protected whistleblowing activity, the FAC should, nonetheless, be dismissed because Defendant is not responsible for an alleged violation committed by its subsidiary, BetterHelp. Defendant argues that BetterHelp was not Plaintiff's employer so its alleged wrongdoing is not actionable under the DWPA, nor can it be imputed to Teledoc. In support of its argument, Defendant relies on the Delaware Superior Court's decision in *Hayman v. City Wilmington*, 2020 WL 6342604, at *2 (Del. Super. Ct. Oct. 29, 2020), which dismissed the plaintiff's case for failing to allege a relationship between the plaintiff's employer and the third party who committed the financial misconduct which was the subject of the DWPA claim. *Id.*

Defendant's reliance on *Hayman* is not persuasive. *Hayman* involved a plaintiff's report of alleged mismanagement of funds belonging to a third-party organization by that organization's president, who also served as the Chief of the City of Wilmington's Fire

7

Department. *Id.* at *1. The plaintiff reported the alleged financial misconduct to his employer, but the funds in issue were not under the control of the City of Wilmington Fire Department. *Id.* The Delaware Superior Court dismissed the suit because the plaintiff failed to allege any financial misconduct by his employer or anyone acting as an agent of the employer. *Id.* at *3.

In the instant case, Plaintiff plausibly pleads a relationship between Teledoc, the parent corporation, and BetterHelp, its subsidiary, to support his allegation that his *employer* retaliated against him for reporting the violation. The FAC alleges that Teledoc assigned Plaintiff the task of preparing the ORA to assess Teledoc's exposure to risks posed by its business units, which included BetterHelp. (D.I. 27 at ¶ 16) Teledoc maintained a Code of Business Conduct and Ethics which prohibited retaliation against an employee for whistleblowing conduct. (*Id.* at ¶ 14) Plaintiff made the whistleblowing complaint on Teledoc's ethics hotline. (*Id.* at ¶ 27) The alleged misconduct reported by Plaintiff involved a request that Plaintiff alter unfavorable risk assessments concerning health and safety issues in an ORA required by the FTC. (*Id.*) The request was made by the President of BetterHelp, who was also a member of Teledoc's Executive Team. (*Id.* at ¶ 23)

Viewing the facts in the light most favorable to Plaintiff, it can reasonably be inferred that Plaintiff reported an alleged violation by Defendant, his employer. Whether Plaintiff will prevail and whether the alleged misconduct of BetterHelp may be imputed to Defendant are factual issues for determination at a later stage of the case. Accordingly, the court recommends that Defendant's motion to dismiss Count I be DENIED.

**B. Count II - Implied Covenant of Good Faith and Fair Dealing**

Defendant moves to dismiss Count II of the FAC, due to Plaintiff's failure to plausibly plead a claim for wrongful termination under the narrow public policy exception to at-will employment. Delaware law recognizes a limited implied covenant of good faith and fair dealing as an exception to the harshness of the employment at-will doctrine. *See Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000). There are four situations in which a breach of the implied covenant of good faith and fair dealing is actionable: (i) the termination violated public policy; (ii) the employer misrepresented an important fact and the employee relied thereon either to accept a new position or remain in a present one; (iii) the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (iv) the employer falsified or manipulated employment records to create fictitious grounds for termination. *Conneen v. MBNA Am. Bank, N.A.*, 334 F.3d 318, 333 (3d Cir. 2003) (citing *Lord*, 748 A.2d at 400).

Plaintiff asserts that his termination constituted a violation of public policy. He does not allege that his claims fit any of the remaining categories to which the exception applies. In Delaware, "a plaintiff must satisfy a two-part test to demonstrate a breach of the covenant of good faith and fair dealing under the violation of public policy exception." *Lord*, 748 A.2d at 401. First, "the employee must assert a public interest recognized by some legislative, administrative or judicial authority[.]" *Id.* Second, "the employee must occupy a position with responsibility for advancing or sustaining that particular interest." *Id.*; *see also Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 587–89 (Del. Ch. 1994) (holding that an attorney fired for refusing to violate her ethical duties has a cause of action). Defendant alleges that Plaintiff fails to satisfy both prongs.

9

As to the first prong, Plaintiff argues that his termination resulted from his unwillingness to falsify the ORA which Plaintiff believed was to be provided to the FTC. Plaintiff argues that falsification of the ORA would be a violation of the federal criminal code, 18 U.S.C. § 1001,[2] prohibiting false statements. (D.I. 27 at ¶ 31)

Defendant relies upon the *Ruccolo* case in support of its argument that Plaintiff fails to satisfy the first prong of the test because the false statement provisions of 18 U.S.C. § 1001, arguably do not apply to an individual employee's civil cause of action against his employer. *Ruccolo v. BDP, Int'l, Inc.*, 1996 WL 735575, at *4 (D.N.J. Mar. 25, 1996). In *Ruccolo*, the court originally rejected the plaintiff's allegation that he was terminated for refusing to falsify and forge documents submitted to the U.S. Customs Department in violation of public policy. *Id.* at *1. But Defendant fails to acknowledge that the *Ruccolo* court subsequently overruled its original decision on this point on a motion for reconsideration, concluding that the complaint was sufficiently specific to put the defendant on notice of the plaintiff's allegations that he was fired for twice refusing to submit materially false documents to the U.S. Customs Service in violation of Section 1001. *Id.* at *16-17. The court reinstated the plaintiff's cause of action, holding that the allegations were sufficient to state a claim for discharge from at-will employment in violation of public policy. *Id.* at *15-16. Thus, Defendant has failed to support

---

[2] 18 U.S.C. § 1001(a) provides as follows:

> Whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years . . . or both.

its argument that the FAC fails to state a claim that Plaintiff was discharged in violation of public policy under part one of the test.

Nonetheless, despite satisfaction of the first element, Plaintiff has not plausibly alleged the second element. The FAC fails to aver that Plaintiff occupies a position with responsibility for advancing or sustaining any public policy interest. Specifically, Plaintiff fails to allege that he was responsible for Defendant's regulatory compliance with the FTC, nor is it alleged that he was responsible for providing the ORA to the FTC. Because Plaintiff does not plausibly allege that he is responsible for implementing a recognized public interest, his public policy claim must fail. *Lord*, 748 A.2d at 401. Accordingly, the court recommends that Defendant's motion be GRANTED as to Plaintiff's alternative claim in Count II for breach of the Implied Covenant of Good Faith and Fair Dealing. Because no further amendment of the pleading would cure the defect, I recommend dismissal of Count II with prejudice.

**C. Count III – New York Whistleblowers' Law**

Defendant moves to dismiss Plaintiff's allegations under Count III of the FAC for lack of subject matter jurisdiction under Rule 12(b)(1). In Count III, Plaintiff alleges that his termination violated the New York Labor Law ("NYLL"), N.Y. Lab. Law § 740. (D.I. 27 at ¶¶ 28–29) The statute prohibits employers from retaliating against an employee who:

> discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety[.]

N.Y. Lab. Law § 740(2)(a).

Defendant argues this court lacks subject matter jurisdiction because Plaintiff worked outside of New York, and it is well settled that the NYLL has no extraterritorial application. (D.I. 31 at ¶ 12) Defendant mischaracterizes the statute's lack of extraterritorial application as a

lack of subject matter jurisdiction.

The FAC alleges subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332. (D.I. 27 at ¶ 2)  District courts have diversity jurisdiction where the parties are citizens of different states and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[.]"  28 U.S.C. § 1332(a)(1).  Here, the FAC alleges that Plaintiff is a resident of Delaware and Defendant is incorporated in New York.  As Defendant correctly notes, the burden of demonstrating complete diversity rests on Plaintiff.  *Azuma v. LeMond Companies, LLC*, 628 F. Supp. 3d 547, 552-53 (D. Del. 2022).  Defendant does not dispute that the requirement for complete diversity of the parties under Section 1332 is satisfied.[3]  Instead, Defendant mistakenly argues that because the NYLL does not apply to claims arising from employment that occurred outside of New York, the court has no jurisdiction to adjudicate the claim.

Defendant's reliance on *Nesbit* undercuts its argument that subject matter jurisdiction is an issue.  *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3d Cir. 2003).  In *Nesbit*, the court explained that determining whether a claim has merit does not implicate subject matter jurisdiction.  *Nesbit*, 347 F.3d at 79 ("[j]urisdiction ... is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.")

---

[3] Although the FAC fails to allege a specific amount in controversy in the jurisdictional paragraph, (D.I. 27 at ¶ 2), Defendant does not challenge subject matter jurisdiction on this basis. Regardless of the omission, the court can reasonably infer that the damages alleged in the FAC for lost wages, employment benefits, and related compensatory damages likely satisfy the amount in controversy requirement under Section 1332. *Cf. Berkery v. State Farm Mut. Auto. Ins. Co.*, 2021 WL 2879511, at *2 (3d Cir. July 9, 2021) ("[I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed ... the suit will be dismissed.") (internal quotations omitted).  Here, the FAC plausibly alleges that Plaintiff's compensation at the time of his termination would likely satisfy the amount in controversy requirement for his alleged damages. (D.I. 27 at ¶¶ 8, 9, 11)

(internal citations omitted).  Here, Defendant's argument that Count III fails to state a claim under the NYLL addresses only the merits of the claim not the court's subject matter jurisdiction.

Defendant further relies upon the *O'Neill* decision which addressed, on summary judgment, whether the NYLL has extraterritorial application, not whether the court lacked subject matter jurisdiction.  *O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572 (S.D.N.Y. 2013).  In *O'Neill*, the plaintiff was primarily domiciled in New York but worked outside of the state as a personal assistant.  When the plaintiff initiated a lawsuit for overtime wages under the NYLL, the court granted the employer's motion and dismissed the plaintiff's claim for overtime work performed outside of New York.  *Id.* at 579.

Plaintiff responds that the FAC plausibly pleads that Plaintiff was required to work in New York on several occasions. For example, the FAC alleges:

> Throughout his employment, Mr. Pickering primarily worked remotely from his home in Delaware. However, throughout his employment he was required to travel to Teladoc's physical offices, including New York, on a number of occasions. Such instances include, for example, the fact that Plaintiff Pickering was in Purchase, New York for a strategy session from September 28, 2022 thru September 30, 2022, and he was in Purchase, NY for an interview involving his herein identified ethics complaint from December 4, 2022 thru December 5, 2022.

(D.I. 27 at ¶ 13)

> Although a large majority of his time as an employee was spent working remotely from Delaware, prior to being promoted to Director of Operations Risk Management and Corporate Insurance, Plaintiff physically would work in the state of New York for approximately one week every quarter of the year. At times as a Senior Director he physically would work in New York. After he made his ethics complaint which questioned the legality of being told to falsify his ORAs, he was hauled to New York and interrogated/interviewed.

(D.I. 27 at ¶ 48a)

The *O'Neill* court held that "[t]he crucial issue is where the employee is laboring[.]"

*O'Neill*, 968 F. Supp. 2d at 579.  At this stage of the proceeding, the FAC plausibly pleads that

Plaintiff "labored" in New York and his employer required him to participate in an investigation of the whistleblowing claim in issue.

Furthermore, the court is not persuaded by Defendant's argument that Plaintiff's claims under the NYLL should nonetheless be dismissed for failure to allege a "substantial and specific danger to public safety." (D.I. 29 at 21)  For the reasons previously addressed under the DWPA analysis at Section III.A, *supra*, the FAC plausibly alleges Plaintiff reported a violation he reasonably believed posed a danger to public health or safety. *See* N.Y. Lab. Law § 740(2)(a). Whether Plaintiff will ultimately prevail on either claim is not an issue that the court may resolve at the motion to dismiss stage.

Defendant alternatively poses a choice of law argument that, as between the Delaware and New York statutes, the court should only consider Plaintiff's claims under the DWPA and reject claims under the NYLL.  Defendant fails to conduct a complete choice of law analysis and makes a conclusory argument that Delaware has the "most significant relationship" to the claim in issue.

As a federal court sitting in diversity, the court must apply the choice of law rules that the forum state would apply. *Lempke v. Osmose Utils. Servs., Inc.*, 2012 WL 94497, at *2 (W.D. Pa. Jan. 11, 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  Under Delaware law, the court need only conduct a choice of law analysis where there is an actual conflict of law.  If the laws of the two jurisdictions produce identical results, a "false conflict" exists, and the court may forego a choice of law analysis. *Pa. Emp. Benefit Trust Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 466 (D. Del. 2010).

Defendant's argument bypasses an analysis of whether an actual conflict of law exists between the DWPA and the NYLL.  Defendant provides no support for conducting a choice of

14

law analysis at the motion to dismiss stage based solely on the allegations in the FAC. Defendant's conclusory argument that, under the "most significant relationship test," Plaintiff's whistleblowing claim must be addressed under Delaware Law is insufficient to support dismissal of Count III. Accordingly, the court recommends that Defendant's motion to dismiss Count III be DENIED.

## IV.    CONCLUSION

For the foregoing reasons, I recommend that Defendant's motion to dismiss Counts I and III be **DENIED** and Defendant's motion to dismiss Count II be **GRANTED** with prejudice.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objections and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated March 7, 2022, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: October 1, 2025

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE